UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHAREESE MCINTOSH,<br>　　　　　　　　Plaintiff<br><br>vs.<br><br>T-MOBILE USA INC.,<br>　　　　　　　　Defendant | )<br>)<br>)<br>)<br>)<br>) CASE NO.<br>)<br>)<br>)<br>) |

COMPLAINT AND DEMAND FOR TRIAL BY JURY

INTRODUCTION

1. This is a complaint for violation of Title VII of the Civil Rights Act of 1964, as amended, and violation of Mass. Gen. Laws ch. 151B, based on the defendant's discrimination against the plaintiff in her employment because of her race, sex and opposition to discrimination.

JURISDICTION

2. This civil action arises under the laws of the United States and concerns federal questions and is therefore under the jurisdiction of this court as provided for in 28 U.S.C. § 1331. This Court also has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.  The case pendant jurisdiction over Plaintiff's state law claims.

VENUE

3. Venue is proper in this judicial district under 42 U.S.C. Section 2000e-5(f)(3) and 5 U.S.C. § 7703(b)(2); as plaintiff was employed by defendant in Boston in the Eastern District of Massachusetts, she was subjected to discrimination and wrongful termination

by the defendant in this judicial district, and decisions adverse to Plaintiff's employment that are the subject of this civil action were made in this judicial district.

## PARTIES

4. Plaintiff, Chareese McIntosh ("McIntosh"), is presently and was at all times relevant to this complaint a resident of Boston, Suffolk County, Massachusetts.

5. Defendant, T-Mobile USA Inc. ("T-Mobile") is a corporation headquartered at 12920 SE 38th Street, Bellevue, WA 98006.

## STATEMENT OF FACTS

6. McIntosh, a black African-American female, began her employment with T-Mobile as a Retail Associate Manager ("RAM"), on or about August 15, 2013.

7. In mid January, 2017, Matt Pringle ("Pringle") began working at the Mattapan store with McIntosh as a Retail Store Manager ("RSM"). As an RSM, Pringle had supervisory authority over McIntosh.

8. From the beginning of his employment in Mattapan, Pringle made a number of racially discriminatory statements and engaged in racially discriminatory conduct that had the purpose and effect of creating a racially discriminatory, hostile and offensive work environment for McIntosh and other T-Mobile employees and customers.

9. In the course of his employment, Pringle made numerous discriminatory statements. Pringle stated that, because he is a white man in a black neighborhood, he would need employees to escort him to his car. He stated that he did not want to work at the Mattapan location and he did not know why a White manager was assigned to the location. (Mattapan is a racially diverse neighborhood). Pringle stated that he had never

worked with city people. It was something he needed to get used to. Pringle stated that his job was more difficult because black people have poor credit. Pringle stated that because Donald Trump was now President, he should not have to help customers that do not speak English. Pringle often watched Trump videos at work. Pringle stated he could not tell customers apart from one another because they are all black. Pringle stated that he should not have to deal with employees renewing their work visas. Pringle told a Retail Sales Associate ("RSA") to follow a black teenage customer around because he had a backback. He did not ask RSAs to follow around white teenage customers who had backpacks. Pringles said that T-Mobile should only hire US citizens. When an employee needed to renew his work visa, and Pringle made a big deal about it. Pringle said he did not want to stay at the Mattapan store for long because he wanted to return to his previous store where white customers had good credit. Pringle told his employees not to expect him to be at work often since he is salaried and because his black assistant managers can handle black customers better than him. On one occasion, a customer who was upset asked to speak with Pringle. Pringle asked McIntosh if the customer was black. McIntosh responded, yes. Pringle then took off his uniform and fled out the fire exit, telling McIntosh that he didn't want to deal with the customer. Pringle abandoned the store and left it to McIntosh and another black employee to deal with the customer.

10. T-Mobile treated the Mattapan store and its employees, including McIntosh, as second class because the employees were predominantly black or other minorities and because the store was located in an area that predominantly served black and other minority customers. T-Mobile has a culture of accepting and tolerating unsafe, illegal and

discriminatory activity in the workplace generally and in the workplace in the Mattapan store in particular.  T-Mobile has a custom, policy and practice of retaliating against employees who complain of unlawful employment discrimination.  This policy was communicated to McIntosh in a threatening and intimidating manner by a store manager of T-Mobile causing her to delay in making her complaints.

11. T-Mobile maintains an "anonymous Integrity Line" where employees can make complaints.   On or about January 20, 2017, T-Mobile received a detailed complaint through the Integrity Line from an employee other than McIntosh providing in extensive detail a description of racial discrimination and a racially hostile environment created by Pringle at the Mattapan store.  The complaint described substantially similar and in some instances identical discrimination to that which McIntosh experienced in the workplace in her interactions with Pringle.  The complaint provide clear notice to T-Mobile that racial discrimination and a racially hostile work environment existed in the Mattapan workplace.

12. In addition to race discrimination involving Pringle, on January 28, 2017, Ms. McIntosh was kicked, shouted at, threatened and intimidated by an employee, Chris Akunna ("Akunna"), who was her subordinate.  McIntosh had a reasonable fear for her safety due to Akunna's aggressive and intimidating behavior and due to the fact that he is larger than McIntosh, stronger than McIntosh and male.  McIntosh sought help and protection from Simon Patel, a T-Mobile District Manager, Pringle and from a human resources representative related to Akunna aggressive and intimidating behavior.  Akunna's actions amounted to discrimination against McIntosh on the basis of her sex.  McIntosh

complained to T-Mobile about Akunna and she otherwise opposed his acts of discrimination. T-Mobile took little action against Akunna and criticized McIntosh regarding the incident because of her gender and race.

13. T-Mobile received complaints that Pringle was engaging in race discrimination from McIntosh and from at least one other employee in late January and early February of 2017. McIntosh specifically complained about "blatant racial discrimination and sexism" and retaliation in an email on January 29, 2017 to T-Mobile's human resources representative Jennifer Boutin ("Boutin"). In her email to Boutin, McIntosh also complained of a "very hostile work environment." In at least one conversation with Boutin at around this time, McIntosh specifically complained about race discrimination on the part of Pringle that is described in this complaint. McIntosh opposed illegal discriminatory practices in the workplace at T-Mobile in good faith and in a reasonable manner.

14. In response to McIntosh's complaint and the Integrity Line complaint, Boutin began an investigation. Boutin initially told McIntosh that she had interviewed other employees who corroborated her complaints and that she had received a similar complaint through the Integrity Line. The investigation soon turned into a witch hunt to determine who the employee was that complained to the Integrity Line. The investigation was a sham aimed at covering up the discrimination and limiting T-Mobile's liability. At the conclusion of the investigation, Boutin falsely assured McIntosh that Akunna would be moved to another store and that she would have no further difficulties with Pringle.

15. Rather than remove Pringle from the workplace, T-Mobile proposed transferring McIntosh to a location more remote from her home where she would have earned less money.  T-Mobile has a custom, policy and practice of transferring employees for complaining about discrimination and this custom, policy and practice was communicated to McIntosh by a store manager.

16. Pringle and other agents and employees of T-Mobile retaliated against McIntosh for complaining to T-Mobile about racial discrimination, sex discrimination and retaliation.

17. In retaliation for McIntosh's complaints, Pringle harassed and intimidated McIntosh by aggressively and inappropriately interrogating her concerning her complaints to human resources, advising her that she should not have complained to human resources, by yelling at her, by telling her that he was not going anywhere, by telling her that she just had to deal with the discrimination.  Pringle stop answering McIntosh's work related questions and constantly subjected her to criticism.  Pringle's treatement of McIntosh in comparison with another similarly situated RAM, Dominique Rouseau, was far more critical, unhelpful and severe. After the complaint, Pringle changed McIntosh's schedule to give her less desirable shifts. Although McIntosh made it clear to Pringle that she did not feel safe working with Akunna, and McIntosh had been assured by Pringle and Boutin that she would not have to work with Akunna until he was moved, Pringle altered McIntosh's schedule so that she would have to work with Akunna on most of her shifts. Pringle went so far as to call Akunna into work on his days off so that he would work with McIntosh.  Pringle falsely told McIntosh that the system made the schedule and there was nothing he could do about it.  In fact, Pringle had the capacity to manually over-ride

any automated scheduling and had done so repeatedly. Pringle wilfully and intentionally scheduled Akunna to work at the same time as McIntosh in order to threaten and intimidate McIntosh in retaliation for her having complained and opposed unlawful discrimination. After McIntosh complained of discrimination, Pringle began to criticize her for taking time off during the time period she was instructed to stay out of work while Boutin was conducting an investigation. Pringle unreasonably criticized McIntosh for requesting time off a day off to have surgery. Even after advising Pringle that she needed the day off for surgery and could provide medical documentation, Pringle advised McIntosh that she would need to work that day and that she needed to figure it out. Although McIntosh had accrued sufficient hours of personal time off to qualify for the day off, and she gave sufficient notice of her medical needs, Pringle unreasonably declined to give her time off in retaliation for her complaints and opposition to discrimination.

18. Pringle and T-Mobile retaliate against employees who make complaints. Pringle stated that Dominique Roseau would never be promoted because she had filed complaints in the past. A prior RSM had also articulated his retaliatory practices against employees such that McIntosh felt intimidated not to complain.

19. The discriminatory and retaliatory acts and practices specified in this complaint are examples of discrimination experienced by McIntosh in the T-Mobile workplace. There are other discriminatory and retaliatory acts and practices that negatively impacted McIntosh. This complaint is not an exhaustive list of every retaliatory and discriminatory act or practice impacting McIntosh.

20. The retaliation engaged in by Pringle and by T-Mobile's other agents and employees also amounted to discrimination against McIntosh on the basis of her race and sex. The retaliation was motivated in part by hostility to McIntosh because of her race and sex.

21. The discrimination and retaliation experienced by McIntosh caused severe mental distress, anxiety, fear, upset, sadness, embarrassment, humiliation, oppression and despair to the extent that it interfered with her psychological and mental well being and made working for T-Mobile a threat to her physical and mental health.

22. The retaliation and discrimination substantially interfered with McIntosh's ability to perform her job, hampered her in performing her job, caused substantial and material alteration of her work environment and made the workplace utterly unbearable.

23. McIntosh's work environment at T-Mobile was pervaded with words and conduct of a racial nature that had the purpose and effect of creating a racially hostile work environment.

24. McIntosh's work environment at T-Mobile was pervaded with words and conduct of a retaliatory nature that had the purpose and effect of creating a hostile work environment because or McIntosh's opposition to unlawful discrimination.

25. McIntosh filed a timely charge of discrimination concerning the illegal discriminatory and retaliatory acts and practices described in this complaint with the Equal Employment Opportunity Commission on or about March 17, 2017. McIntosh also filed timely complaints with the Massachusetts Commission Against Discrimination. The discrimination and retaliation that McIntosh experience was part of ongoing, continuing and systematic discrimination involving a series of acts. The continuing acts doctrine,

equitable estoppel and equitable tolling are applicable to the complaints filed by McIntosh. McIntosh has properly exhausted her administrative remedies and has timely filed this complaint in court as authorized by state and federal law.

26. After McIntosh filed filed her EEOC complaint, she went on medical leave as permitted by the Family Medical Leave Act.  In retaliation for opposing discrimination under state and federal law, she was terminated by T-Mobile in May of 2017.  Without any notice, T-Mobile rescinded her medical benefits.   Before terminating her medical benefits, McIntosh did not receive any notice by mail that she could continue her health insurance coverage as required by the COBRA law.  The termination of her medical benefits interfered with my ability to access care that she was receiving at the time.

27. After contacting T-Mobile/Broadspire (a benefits manager), and alerting them that her termination was illegal under the Family Medical Leave Act, McIntosh was re-instated to her employment and her benefits were restored.

28. On or about June 27, 2017, T-Mobile filed a position statement with the EEOC responding to McIntosh's charge of discrimination. T-Mobile made false claims against McIntosh in the position statement.  The position statement was riddled with errors and false or misleading statements.  It also contained material omissions that were misleading. The reasons given for T-Mobile's actions with regard to McIntosh were false, inconsistent, implausible, unworthy of credence and mere pretexts for discrimination and retaliation.

29. Due to ongoing discrimination and retaliation and the failure of T-Mobile to remedy the hostile & discriminatory workplace, McIntosh could not safely return to the workplace

without endangering her safety and harming her health.  T-Mobile subjected McIntosh to harassment and retaliation that was so severe that no reasonable person could endure.  T-Mobile constructively discharged McIntosh because of her race and in retaliation for her opposition to illegal discrimination in the workplace.  McIntosh could not return to work after going out on leave.

30. T-Mobile, by its agents and employees, coerced, threatened and interfered with the plaintiff in the enjoyment of rights protected by G.L. ch. 151B and Title VII.

31. T-Mobile systematically discriminates against African-American and black employees and it so discriminated against McIntosh.

32. T-Mobile subjected McIntosh to more exacting scrutiny, negative evaluations, criticism, interruptions, verbal abuse, scheduling abuse, harassment, coercion, intimidation and other unequal treatment because of her race and because of her complaints and opposition to unlawful employment discrimination.

33. T-Mobile, it agents and employees, including Pringle, Akunna and Patel have wilfully and maliciously discriminated against McIntosh and have egregiously and outrageously violated her rights to be free from discrimination and retalation under both state and federal law.  T-Mobile, its agents and employees have acted with deliberate indifference and reckless disregard to the serious harm and injury done to McIntosh and to the severe violation of her rights that she experienced at T-Mobile.  T-Mobile tolerated, encouraged, ratified and acquiesced in the discriminatory and retaliatory actions of Pringle, Akunna, Boutin and Patel.

34. McIntosh has lost substantial income, has lost employment benefits, has back pay losses, front pay losses, lost earning capacity, other monetary losses, personal losses and harm to her reputation as a direct and proximate result of retaliation and discrimination by T-Mobile, its agents and employees.

Count One

(Racial Discrimination in Violation of Title VII of the

Civil Rights Act of 1964, 42 USC 2000e. et seq. and ch. 151B )

35. The foregoing paragraphs are re-alleged and incorporated by reference herein.

36. T-Mobile's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII. The stated reasons for T-Mobile's conduct were not the true reasons, but instead were pretexts to hide the T-Mobile's discriminatory animus.

Count Two

(Retaliation for Engaging in Protected Activities)

37. The foregoing paragraphs are re-alleged and incorporated by reference herein.

38. T-Mobile's conduct as alleged above constitutes retaliation against the McIntosh because she opposed discrimination and engaged in activities protected by Title VII and Mass. Gen. Laws ch. 151B. The stated reasons for T-Mobile's conduct were not the true reasons, but instead were pretexts to hide the T-Mobile's retaliatory animus.

WHEREFORE, plaintiff respectfully requests:

A. A trial by jury on all matters so triable;

B. judgment against defendant for compensatory and punitive damages;

    C.    interest, costs and a reasonable attorney's fees under 42 U.S.C. § 1988, G.L. ch. 151B and other applicable laws;

    D.    such other relief as is just, equitable or proper.

> Respectfully submitted,
> Chareese McIntosh,
> by her attorney,

DATED:  January 19, 2018      /s/ J. Whitfield Larrabee
                                        J. Whitfield Larrabee
                                        251 Harvard Street, Suite 9
                                        Brookline, MA 02446
                                        jwlarrabee@gmail.com
                                        (617) 566-3670
                                        BBO # 553499